## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE ORRIN S. ANDERSON,

        Debtor,

---

ORRIN S. ANDERSON, A/K/A ORRIN ANDERSON,
A/K/A ORRIN SCOTT ANDERSON,

        Debtor and Plaintiff
        on behalf of himself
        and all others similarly
        situated,

    v.

CAPITAL ONE BANK (USA), N.A.

        Defendant.

Chapter 7
Case No. 14-22147 (RDD)

Adv. Proc. No.
15-08342 (RDD)

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..................................3

    I.    The Terms of the Proposed Settlement ....................................5

    II.   The Proposed Notice ........................................................7

ARGUMENT ............................................................................7

    I.    The Court Should Preliminarily Approve the Proposed Settlement ...................7

        A.  Legal Standard ........................................................8

        B.  The Settlement Falls Well Within the Range of Possible Approval ..................10

            1.  The Settlement is Procedurally Fair ......................................10

            2.  The Settlement is Substantively Fair, as Application of the
               *Grinnell* Factors Shows ........................................12

               i.     The Complexity, Expense, and Likely Duration of Litigation .....12

               ii.    The Reaction of the Class to Settlement ........................12

               iii.   The Stage of the Proceedings and the Amount of Discovery
                     Completed ....................................................13

               iv.   The Risks of Establishing Liability and Damages ........................13

                v.    The Risk of Maintaining Class Action Status Through Trial .......14

               vi.   The Ability of the Defendant to Withstand a Greater
                     Judgment ....................................................14

                vii.  The Range of Reasonableness of the Settlement Fund ................14

        C.  The Court Should Preliminarily Certify the Settlement Class ............16

1. Numerosity ............................................................................................16

2. Commonality .........................................................................................16

3. Typicality .............................................................................................17

4. Adequacy of Representation ..................................................................18

5. Predominance and Superiority ..............................................................19

D.  The Court Should Approve the Proposed Notice Plan .........................................20

CONCLUSION .........................................................................................................22

## TABLE OF AUTHORITIES

PAGE(S)

Cases

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................................... 19

*Anderson v. Capital One Bank (USA), N.A.,*
   Adv. Proc. No. 15-08342 (RDD) .............................................................................. 3

*Banyai v. Mazur,*
   No. 00 CIV 9806 SHS, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ...................................... 13

*Bodon v. Domino's Pizza, LLC,*
   No. 09-CV-2941 SLT, 2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ...................................... 14

*Charron v. Wiener,*
   731 F.3d 241 (2d Cir. 2013) ............................................................................. 8, 18

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ............................................................................. 9, 12

*Clark v. Ecolab, Inc.,*
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
   2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ............................................................... 9

*Danieli v. IBM,*
   No. 08 Civ. 3688, 2009 WL 6583144 (S.D.N.Y Nov. 16, 2009) ........................................... 10

*D'Alauro v. GC Servs. Ltd. P'ship,*
   168 F.R.D. 451 (E.D.N.Y. 1996) .......................................................................... 20

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ............................................................................. 8, 10

*Hadel v. Gaucho, LLC,*
   No. 15 CIV. 3706 (RLE), 2016 WL 1060324 (S.D.N.Y Mar. 14, 2016) ....................... 8, 9, 18

*Handschu v. Special Servs. Div.,*
   787 F.2d 828 (2d Cir. 1986) ....................................................................... 20, 21, 22

*In re Buspirone Patent Litig.,*
   210 F.R.D. 43 (S.D.N.Y. 2002) .......................................................................... 20

*In re Global Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................. 14, 16, 17

iv

*In re Med. X-Ray Film Antitrust Litig.*,
   No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ................................................. 14

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litig.*,
   241 F.R.D. 185 (S.D.N.Y. 2007) ........................................................................................ 18

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................................... 10

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................ 10

*In re Nassau Cty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) .......................................................................................... 19, 20

*In re Nissan Radiator/Transmission Cooler Litig.*,
   No. 10 CV 7493 VB, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ....................................... 17

*In re Sinus Busters Products Consumer Litig.*,
   No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ..................... 14

*Manley v. Midan Rest, Inc.*,
   No. 14 CIV. 1693 (HBP), 2016 WL 1274577 (S.D.N.Y Mar. 30, 2016) ..................... 9, 13, 18

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) .......................................................................................... 16, 18

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998) ............................................................................................... 9

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ...................................................................................... 8, 9, 11

*Meredith Corp. v. SESAC, LLC*,
   87 F.Supp.3d 650 (S.D.N.Y. 2015) ..................................................................................... 12

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ..................................................................................... 10, 11

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .......................................................................................... 17, 18

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) ................................................................................................. 17

*Tart v. Lions Gates Entm't Corp.*,
    No. 14-CV-8004-AJN, 2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015)........................... 9, 18, 19

*Tiro v. Pub. House Investments, LLC*,
    No. 11 CIV. 7679 CM, 2013 WL 2254551 (S.D.N.Y. May 22, 2013)............................. 10, 11

*Viafara v. MCIZ Corp.*,
    No. 12 CIV, 7452 RLE, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) .................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................................ 16, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................................ 8, 20

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .................................................................................................... 16

*Willix v. Healthfirst, Inc.*,
    No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y Feb. 18, 2011).................................................. 13

*Zeltser v. Merrill Lynch & Co.*,
    No. 13 CIV. 1531 FM, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) .................................... 13

Statutes

Section 524 of the Bankruptcy Code ......................................................................................... 1, 3

Rules

Fed. R. Civ. P. 23(a) ........................................................................................ 16, 17, 18, 19
Fed. R. Civ. P. 23(b) ..................................................................................................... 19, 21
Fed. R. Civ. P. 23(c) ....................................................................................................... 2, 21
Fed. R. Civ. P. 23(e) ................................................................................................... 2, 8, 20
Fed. R. Civ. P. 23(g) .............................................................................................................. 2
Fed. R. Civ. P. 30(b)(6).................................................................................................... 4, 11

Plaintiff Orrin S. Anderson ("Plaintiff"), on behalf of himself and all others similarly situated, respectfully submits this memorandum of law in support of Plaintiff's unopposed motion for preliminary approval of the parties' settlement of this class action suit ("Motion").

## PRELIMINARY STATEMENT

In this class action, Plaintiff has alleged that Capital One Bank (USA), N.A. ("Capital One" or "Defendant") violated the discharge injunction found in Section 524 of the Bankruptcy Code by refusing, as a policy, to update the credit furnishing on certain consumer debts to reflect that those debts were discharged in bankruptcy. Capital One denies the allegations in the Complaint and Amended Complaint and denies that its conduct violated the discharge injunction.

The Parties have agreed to enter into a Settlement Agreement to resolve this case.[1] If approved, the Settlement would resolve the claims against Defendant in this action. The Settlement Agreement was negotiated at arm's length by experienced and knowledgeable counsel, with the assistance of an experienced mediator, following significant discovery, and it is a fair, reasonable, and adequate settlement. For these reasons, preliminary approval is warranted.[2]

Pursuant to the Settlement Agreement, as described further below, Defendant has agreed to fund a $10.5 million Settlement Fund, subject to Court approval. Based on its records, Capital One estimates that there are over eight hundred thousand Class Members (as defined below). Those Class Members who submitted payments to Capital One on an Affected Account post-discharge and have not been compensated fully for those payments may submit a claim for

---

[1] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Settlement Agreement.

[2] The Parties have agreed upon a form Proposed Order Preliminarily Approving Settlement and Providing For Notice, which is Exhibit 3 to the Settlement Agreement filed herewith.

reimbursement. The remaining settlement monies will be distributed to the Class on a claims-made basis. As a part of the Agreement, Capital One also represents and warrants that since December 2015, it has asked the Credit Reporting Agencies to delete Tradelines of sold debt, including for the Affected Accounts it had identified at that time, and has confirmed that these deletions have been regularly occurring. Capital One further represents and warrants that, absent specified exceptions (*e.g.*, a Class Member's request), it will not request that the Credit Reporting Agencies reinstate those Tradelines. In addition, Capital One represents and warrants that, absent any change in federal or state law or contrary direction or expectation from any government regulator, during the period set forth in the Agreement Capital One will, after the sale of charged off debt relating to a Credit Card Account request that the Credit Reporting Agencies delete or suppress the Capital One Tradeline for that account after information about the sale is furnished. As such, the Settlement offers substantial relief to the Settlement Class, as well as future consumers, while also taking into account the substantial risks inherent in proceeding with litigation of this nature.

For all of these reasons, and as further described below, Plaintiff respectfully requests that the Bankruptcy Court (i) grant preliminary approval of the Settlement; (ii) appoint him as class representative for the Settlement Class and appoint his counsel as Class Counsel; and (iii) approve the proposed notice plan to which the parties agreed in the Settlement. *See generally* Fed. R. Civ. P. 23. ***Further, Plaintiff respectfully requests that the Court grant preliminary approval at the hearing scheduled for April 23, 2019, so that the settlement notice and administration process can begin expeditiously and the Class may receive the benefit of the Settlement as soon as possible.***

## FACTUAL AND PROCEDURAL BACKGROUND

In the Amended Complaint, Plaintiff alleges that Capital One attempts to collect Chapter 7 discharged consumer debts by refusing, as a policy, to update its credit furnishing to reflect that the debts were discharged in Chapter 7 bankruptcy. Plaintiff alleges that Capital One's failure to update its credit furnishing to reflect Chapter 7 bankruptcy discharges pressures consumers to repay discharged debt in order to have the negative information removed from their credit reports. Am. Compl. ¶ 12. Plaintiff alleges that Capital One's systematic refusal to update its credit furnishing violates the discharge injunction set forth in § 524 of the Bankruptcy Code. Capital One denies these allegations and denies that its conduct violated the discharge injunction. The Settlement Agreement that Plaintiff now submits for preliminary approval provides excellent relief to the Settlement Class concerning these claims, following several years of vigorously contested litigation.

On January 31, 2014, Plaintiff Orrin S. Anderson filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York. *In re Orrin S. Anderson*, No. 14-22147. The Bankruptcy Court entered a discharge order on May 6, 2014. On or about June 9, 2015, Mr. Anderson moved to reopen his bankruptcy for the purpose of challenging Capital One's conduct, and the Bankruptcy Court granted his motion on July 6, 2015.

On July 31, 2015, Plaintiff Orrin S. Anderson, individually and on behalf of all others similarly situated, filed a complaint against Capital One (the "Complaint"). *Anderson v. Capital One Bank (USA), N.A.,* Adv. Proc. No. 15-08342 (RDD), Dkt. No. 1. The parties subsequently engaged in extensive motion practice.

On September 18, 2015, Capital One moved to dismiss the Complaint and simultaneously
moved to transfer the case.   Dkt. Nos. 8, 12.   Following full briefing and oral argument, the
Bankruptcy Court denied the motions.   *See* Dkt. No. 42.

In the course of the litigation, the parties served significant written discovery, including
requests for production of documents, interrogatories, and requests for admission.   *See* Declaration
of Adam R. Shaw in Support of Motion for Preliminary Approval of Settlement ("Shaw Decl.")
at ¶ 4.   In response to requests for production served by Class Counsel, Capital One made ten
document productions, totaling just under 300,000 pages of documents, which Class Counsel
analyzed and utilized in the course of the litigation.   *Id.*   Class Counsel also deposed two corporate
representatives of Capital One pursuant to Fed. R. Civ. P. 30(b)(6).   *Id.*   In addition, Class Counsel
have issued third party subpoenas in the course of the litigation.   *Id.*

Moreover, the parties engaged in serious and informed negotiations in an effort to reach an
equitable resolution of the litigation.   The parties had numerous settlement discussions and
mediated the dispute with an experienced and well-respected mediator from Pilgrim Mediation
Group, Jonathan Lerner.   *Id.* at ¶ 6.

Based upon their discovery, investigation, and evaluation of the facts and law relating to
the matters alleged in the pleadings, and after engaging in extensive arm's length negotiations, the
parties reached agreement on the Settlement.   The Settlement Agreement both provides significant
benefits to Class Members and takes into account the substantial risks inherent in proceeding with
litigation of this nature.   Plaintiff had two objectives in filing this action – to remedy the alleged
violation of the discharge injunction by having Capital One update its credit furnishing and to
compensate putative Class Members who were harmed by Capital One's actions.   As described
further below, the Settlement Agreement achieves both objectives and further safeguards the credit

reports of future consumers.  Capital One has addressed the credit furnishing with respect to Class

Members' Affected Accounts and, under the terms of the Settlement, if Capital One sells debt, it

has represented and warranted that it will address Tradelines related to those sales as set forth in

the Settlement Agreement.  Moreover, the Settlement provides reimbursement to Class Members

who made post-discharge payments on their sold Capital One debts, and further allows Settlement

Class Members to make claims from a $10.5 million Settlement Fund.

## I.    The Terms of the Proposed Settlement.

Under the Settlement Agreement, the Class is defined as the collective group of those

individuals (i) who maintained a Credit Card Account with Capital One; (ii) whose account Capital

One charged off and then sold to a Debt Buyer on or after January 1, 2008; and (iii) who post-sale

sought and obtained a discharge of the debt as a result of his/her bankruptcy under Chapter 7 of

the Bankruptcy Code, through and including March 22, 2016.  Agreement, § 1.14.

The Settlement Agreement provides significant relief to the Class.  With respect to

monetary relief, the Settlement Agreement provides that Capital One will fund a qualified

Settlement Fund of $10.5 million.  From this Settlement Fund, those Settlement Class Members

who made a payment or payments of a discharged debt to Capital One or to a Debt Buyer to whom

a Capital One Affected Account was sold may seek reimbursement.[3]  Agreement, § 5.2.2.  The

remaining funds in the Settlement Fund shall be disbursed primarily to Participating Claimants

who submit a Qualifying Claim Form, as described more fully in the Agreement.  *Id*. at § 5.2.3.

---

[3] Reimbursement Claims are not available for Class Members who cashed a check under the
Capital One Post Sale Payment Refund Administration Program, so long as that check fully
compensated the Class Member for the payment or payments he or she made of a discharged debt.
To date, three hundred and eighty-six (386) potential Settlement Class Members cashed such
checks in the aggregate amount of $210,092.04.

The Class Representative may also apply to receive, subject to court approval, an Incentive Award of up to $5,000 from the Settlement Fund. *Id*. at § 15.6.

In addition, as a direct result of the Action, Capital One has requested that the Credit Reporting Agencies delete the Tradelines associated with Class Members' Affected Accounts. *Id*. at § 3.2.1. Capital One further represents and warrants as a part of the Settlement that, absent specified exceptions (*e.g.*, a Class Member's request), Capital One will not ask the Credit Reporting Agencies to reinstate these Tradelines. *Id*. at §§ 3.2.2-3.2.3. Capital One also represents and warrants that, absent any change in federal or state law or contrary direction or expectation from any government regulator, during the period set forth in the Agreement Capital One will, after the sale of charged off debt relating to a Credit Card Account, request that the Credit Reporting Agencies delete or suppress the Capital One Tradeline for that account after information about the sale is furnished. *Id*. at § 3.2.5.[4] Thus, the Settlement addresses the core complaint of Plaintiff and the Class and provides relief to them and to future consumers.

Under the Agreement, costs including those associated with Notice, Claims, and the administration of the Settlement shall be invoiced by the Settlement Administrator and paid from the Settlement Fund. § 3.3.2. Class Counsel may seek preliminary approval from the Bankruptcy Court and final approval from the District Court for an award of Attorneys' Fees and Expenses in the Action, which shall be paid from the Settlement Fund. *Id*. at § 15. There shall be no reverter of any part of the Settlement Fund to Capital One after the Effective Date. *Id*. at § 3.3.1.

---

[4] Section 3.2.6 in the Settlement Agreement addresses Capital One's obligations under the Agreement if federal or state law should change to require it to furnish on such debt. *Id*.

## II.    The Proposed Notice

The Settlement Agreement provides Brown Greer LLC shall serve as the Settlement Administrator and shall distribute Mail Notice to the Class.  Agreement, §§ 1.35, 1.53; *see also id.*, Exh. 1a.  Capital One shall confidentially provide a list of all Class Members known to Capital One to the Settlement Administrator, so that the Settlement Administrator may provide Mail Notice directly to all Class Members.  *Id.* at §§ 6.3, 7.2.  In addition, the Settlement Administrator shall establish a Settlement Website, which shall contain the Settlement Agreement, Notice and Claims Forms.  *Id.* at § 7.6.  Class Members may submit a Claim Form through the Settlement Website.  *Id.*

Under the terms of the Settlement Agreement, the Mail Notice shall also be provided to Class Members on a timely basis, *i.e.*, within forty-five days after the Bankruptcy Court's entry of the Preliminary Approval Order.  *Id.* at § 1.34.  A Long Form Notice, to be available on the website, will also provide detailed information concerning the Action, the terms of the Settlement, the Settlement approval process, and how to participate in the Settlement, opt out of it, or object to it.  *Id.* at § 1.32; Exh. 1b.

## <u>ARGUMENT</u>

## II.    The Court Should Preliminarily Approve the Proposed Settlement.

Class Counsel have worked diligently to reach a fair, reasonable, and adequate settlement.  Plaintiff and Class Counsel believe the claims the Settlement resolves are meritorious.  They recognize, however, that there is significant risk and expense associated with continuing to prosecute these claims through trial and any appeals.  In negotiating and evaluating the Settlement, Plaintiff and Class Counsel have taken these costs and uncertainties into account, as well as the delays inherent in complex class action litigation.  Indeed, this action has already been pending for

more than four years.  In light of the foregoing considerations, Class Counsel believe the present

Settlement provides an excellent outcome for the Settlement Class and is thus in the best interests

of the Settlement Class.

### A.  Legal Standard.

Rule 23(e) requires court approval of any settlement of claims brought on a class basis.  A

court may approve a class action settlement "only after . . . finding that [the settlement] is fair,

reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In order to determine whether a settlement

is "fair, reasonable, and adequate," a court must assess whether the settlement is both procedurally

and substantively fair.  *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also McReynolds*

*v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009); *D'Amato v. Deutsche Bank*, 236 F.3d

78, 85 (2d Cir. 2001).

As the Second Circuit has recognized, there is a "strong judicial policy in favor of

settlements, particularly in the class action context."  *McReynolds*, 588 F.3d at 803 (internal

quotation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir.

2005) ("The compromise of complex litigation is encouraged by the courts and favored by public

policy."); *Hadel v. Gaucho, LLC*, No. 15 CIV. 3706 (RLE), 2016 WL 1060324, at *2 (S.D.N.Y

Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because

early settlement allows class members to recover without unnecessary delay and allows the judicial

system to focus resources elsewhere.").

Consistent with the strong judicial policy in favor of settlement, in assessing whether a

settlement is procedurally fair, courts apply a "presumption of fairness, reasonableness and

adequacy as to the settlement where a class settlement is reached in arm's length negotiations

between experienced, capable counsel after meaningful discovery."  *McReynolds*, 588 F.3d at 803

(internal quotation omitted).  In assessing whether a settlement is substantively fair, courts in this

Circuit use the nine factor-test set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d

Cir. 1974).[5]

The approval of a proposed class action settlement is a matter of discretion for the trial

court.  *See Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1998).  "In

exercising this discretion, courts should give proper deference to the private consensual decision

of the parties."  *Clark v. Ecolab, Inc.,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL

6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted).  "In evaluating the

settlement, the Court should keep in mind the unique ability of class and defense counsel to assess

the potential risks and rewards of litigation . . . ." *Id*. (internal quotation marks omitted).  The

Second Circuit will only disturb a judicially-approved class action settlement when there is a clear

showing that the district court abused its discretion.  *McReynolds*, 588 F.3d at 803.

The first step in the settlement of a class action is the trial court's preliminary determination

of whether "notice of the proposed settlement . . . should be given to class members in a manner

as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy

of the settlement."  *Manley v. Midan Rest, Inc.*, No. 14 CIV. 1693 (HBP), 2016 WL 1274577, at

*8 (S.D.N.Y Mar. 30, 2016) (citations omitted).  If the proposed settlement "appears to fall within

the range of possible approval," the court should preliminarily approve it and order that the class

members receive notice of the settlement.  *Id*.; *see also Hadel*, 2016 WL 1060324, at *2*Tart v.*

---

[5] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id*.

*Lions Gates Entm't Corp.*, No. 14-CV-8004-AJN, 2015 WL 5945846, at *5 (S.D.N.Y. Oct. 13, 2015); *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

### B.  The Settlement Falls Well Within the Range of Possible Approval.

The proposed Settlement falls within the range of possible approval and thus meets the standard for preliminary approval.  Because it is provisional, courts grant preliminary approval where the proposed settlement has "no obvious defects" that raise doubts about the fairness of the settlement.  *Danieli v. IBM*, No. 08 Civ. 3688, 2009 WL 6583144, at *4 (S.D.N.Y Nov. 16, 2009).  Thus, full consideration of the requirements for *final* approval is unnecessary at this stage.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) ("a full fairness analysis is unnecessary at this stage . . . .").  Nevertheless, all of the relevant factors weigh in favor of the settlement proposed here.

### 1.  The Settlement is Procedurally Fair.

In order to demonstrate a settlement's procedural fairness, a party must show that "the settlement resulted from arm's-length negotiations and that plaintiff's counsel have possessed the experience and ability, and have engaged in the discovery necessary to effective representation of the class's interests."  *D'Amato*, 236 F.3d at 85 (internal quotation omitted).  When counsel for the parties engage in diligent arm's length negotiations, a settlement is generally entitled to a presumption of fairness. *See In re NASDAQ Mkt. Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*").  The participation of a highly qualified mediator in settlement negotiations strongly supports a finding that negotiations were conducted at arm's length and without collusion.  *D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in precertification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 WL

2254551, at *2 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS employment

mediator . . . reinforces that the Settlement Agreement is non-collusive.").

Here, the Settlement is the product of vigorous, arm's length negotiations by informed and

experienced counsel, following the necessary discovery. With respect to discovery, Class Counsel

conducted a thorough pre-suit investigation and evaluation of the relevant claims and defenses.

Shaw Decl. at ¶ 4. Moreover, they have briefed a number of contested issues to the Bankruptcy

Court, and conducted significant discovery in the course of the litigation, including serving

requests for production and interrogatories on Capital One. *Id*. In response to Plaintiff's document

requests, Capital One produced just under 300,000 pages of documents, which Class Counsel have

analyzed. *Id*. Class Counsel have also deposed two corporate representatives of Capital One

pursuant to Fed. R. Civ. P. 30(b)(6) and sought third party discovery. *Id*. By engaging in thorough

discovery and the litigation of these claims in the Bankruptcy Court, Class Counsel has obtained

the necessary understanding of the strengths and weaknesses of Plaintiff's claims.

With respect to the negotiation of the Settlement, both Plaintiff and the Settlement Class

and Capital One are represented by experienced and knowledgeable counsel. In particular, Class

Counsel has experience in both complex class action litigation and bankruptcy law. The

Settlement was reached after the parties engaged in extensive negotiations over a period of months.

These negotiations included face-to-face sessions as well as numerous telephone and email

discussions. Moreover, the parties' face-to-face negotiations took place during a mediation session

with an experienced and highly regarded mediator. *Id*. at ¶ 6. In all respects, the negotiations were

thorough and hard fought, and free from any undue pressure or collusion.

As such, the Settlement is procedurally fair and is entitled to a "presumption of fairness,

reasonableness and adequacy." *McReynolds*, 588 F.3d at 803.

**2.    The Settlement is Substantively Fair, as Application of the *Grinnell* Factors Shows.**

In order to demonstrate a settlement's substantive fairness for final approval of the settlement, a party must demonstrate that the factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), are satisfied.  Here, to the extent those factors are relevant and provide a useful guide for evaluating a settlement's fairness at this preliminary stage, they overwhelmingly favor preliminary approval of the Settlement.

**i.    The Complexity, Expense, and Likely Duration of Litigation.**

First, the complex, expensive and time-consuming nature of this litigation weighs heavily in favor of settlement.  *Meredith Corp. v. SESAC, LLC*, 87 F.Supp.3d 650, 663 (S.D.N.Y. 2015) ("The greater the complexity, expense and likely duration of the litigation, the stronger the basis for approving a settlement.") (internal quotation omitted).  The procedural history above demonstrates that this litigation is, by its nature, complex.  Moreover, it has already gone on for more than three years, at significant expense to the parties.  If the Settlement is not approved, further litigation would resume, which would be yet more costly, complex and time-consuming.  This litigation would likely include class certification proceedings (and potentially appeals), further fact discovery, including depositions, interrogatories and requests for admission, and more voluminous document discovery, expert discovery, dispositive motion practice and trial.  In addition, post-judgment appeals are also possible.  This litigation would be costly and time-consuming and it would require significant judicial oversight.

**ii.    The Reaction of the Class to Settlement.**

This factor is not relevant at the preliminary approval stage, as the class has not yet received notice of the proposed settlement.

### iii. The Stage of the Proceedings and the Amount of Discovery Completed.

This factor also weighs heavily in favor of settlement, given that the action has been pending for more than three years and Class Counsel have taken a significant amount of discovery during that time period, as described above.  As a result of the discovery taken to date and as a result of discovery taken in related cases pending in the Southern District Bankruptcy Court, Class Counsel have gained sufficient insight into the facts and legal issues associated with the case to make the necessary judgments concerning settlement.  *See Zeltser v. Merrill Lynch & Co.*, No. 13 CIV. 1531 FM, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014) ("Here, through both formal discovery and an informal exchange of information prior to mediation, Plaintiff obtained sufficient discovery to weigh the strengths and weaknesses of his claim and to accurately estimate damages at issue.").  In short, "discovery has advanced sufficiently to allow the parties to resolve the case responsibly." *Manley*, 2016 WL 1274577, at *9.

### iv. The Risks of Establishing Liability and Damages.

As with any litigation, this action inherently involves risks.  Thus, this factor weighs in favor of settlement, as well.  Capital One continues to deny liability and, absent settlement, it would no doubt continue to vigorously oppose Plaintiff's action, as it has done every step of the way to date.  As such, continued litigation presents the likelihood of significantly increased costs, with no guarantee for recovery, let alone a recovery greater than that which the Settlement provides.  *See, e.g., Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862, at *4 (E.D.N.Y Feb. 18, 2011) ("Litigation inherently involves risks.") (citation omitted); *Banyai v. Mazur*, No. 00 CIV 9806 SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) ("[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."); *Zeltser*, 2014 WL 4816134, at *6.

### v.       The Risk of Maintaining Class Action Status Through Trial.

This factor also weighs in favor of settlement, as Capital One would no doubt vigorously
oppose class certification.  Moreover, certified classes are subject to modification based on further
developments in the litigation.  As such, additional challenges to proceeding on a class-wide basis
present a risk to the class and its potential recovery.  *See, e.g., In re Med. X-Ray Film Antitrust
Litig.*, No. CV-93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998); *see also In re Global
Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (a settlement that is reached
prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in
light of the risks it avoids).

### vi.      The Ability of the Defendant to Withstand a Greater Judgment.

This factor is neutral.  While Capital One would likely be able to withstand a greater
judgment, where, as here, the other *Grinnell* factors weigh in favor of settlement, this one factor
does not weigh against settlement.  *See, e.g.,  In re Sinus Busters Products Consumer Litig.*, No.
12-CV-2429 (ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("Courts have
recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors,
especially where the other factors weigh in favor of approving the settlement.") (citations omitted);
*Viafara v. MCIZ Corp.*, No. 12 CIV, 7452 RLE, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014)
(A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the
settlement is unfair") (citation omitted).

### vii.     The Range of Reasonableness of the Settlement Fund.

*Grinnell* directs that the court view the range of reasonableness of the settlement fund in
light of (i) the best possible recovery and (ii) all the attendant risks of litigation.  *See, e.g., Bodon
v. Domino's Pizza, LLC*, No. 09-CV-2941 SLT, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015)

("[T]he question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]") (citation omitted).  These factors also weigh heavily in favor of settlement.

Here, Plaintiff alleges that Capital One violated the discharge injunction of the Bankruptcy Code by failing to update its credit furnishing on Class Members' Affected Accounts to remove the "charged off" or other derogatory notation and instead furnish that debt as "Included in Bankruptcy."  As a result of this litigation and as a part of the Settlement, Capital One has requested deletion of the Tradelines associated with Class Members' Affected Accounts and to address any future issues in the manner described above (*see supra*, p. 6).  This relief provides an excellent outcome for both the Class and for future consumers.  Moreover, Class Members are entitled to make claims from a $10.5 million Settlement Fund.  In addition, Class Members whose debts Capital One sold and were later discharged in Chapter 7 bankruptcy, and who subsequently made payments on those debts to Capital One for which they have not already been fully compensated may make a claim for reimbursement.

Taking all of the above into account, the Settlement falls well within the "range of reasonableness."  Class Counsel have achieved the best possible recovery in light of the cost and risks of further litigation.

\* \* \*

Thus, application of the *Grinnell* factors indicates that the Settlement is substantively fair. As such, Plaintiff respectfully requests that the Bankruptcy Court preliminarily approve the Settlement.

### C.  The Court Should Preliminarily Certify the Settlement Class.

The Bankruptcy Court should preliminarily certify the Settlement Class contemplated by the Settlement Agreement.  The Second Circuit has long recognized the propriety of certifying a class solely for purposes of settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Global Crossing*, 225 F.R.D. at 451.  Rule 23 provides that a court must certify an action as a class action where the class satisfies the four prerequisites of Rule 23(a), and one of the three criteria set forth in Rule 23(b).  Here, the proposed Settlement Class satisfies the relevant requirements of Rule 23(a) and Rule 23(b)(3).[6]

#### 1.  Numerosity

Rule 23(a)(1) requires Plaintiff to demonstrate that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In this Circuit, the numerosity requirement is met where the proposed class is "obviously numerous."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  Here, there is no dispute that thousands of people nationwide were affected by Capital One's alleged actions.  Based on its records, Capital One estimates that there are over eight hundred thousand Class Members.  Shaw Decl. at ¶ 7.  Thus, numerosity is easily satisfied here.

#### 2.  Commonality

Rule 23(a)(2) requires Plaintiff to demonstrate that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Thus, there must be a "common contention" that is "capable of classwide resolution" such that the "determination of its truth or falsity will resolve

---

[6] The standards for certification of a settlement class, on the one hand, and a litigation class, on the other, differ.  While Capital One does not dispute that the Settlement Class can be certified for purposes of Settlement, it has preserved its rights to contest class certification in the event this Settlement is not approved.

an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores,
Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *see also id.* ("for purposes of Rule 23(a)(2) even a single
common question will do").    The commonality requirement is satisfied where plaintiff
demonstrates that his injuries "[d]erived from defendants' . . . unitary course of conduct." *Sykes
v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

That is exactly the case here.  Plaintiff has alleged that Capital One had a uniform policy
of refusing to update credit furnishing on Class Members' debts to reflect that the debts were
discharged in bankruptcy.    Amended Compl., ¶ 7.  This uniform policy is at the crux of the case
and resolution of whether Capital One's actions in refusing to update their credit furnishing
violated the discharge injunction is a question of law and fact common to all Class Members.  In
short, the issue is central to each Class Member's claim and it is capable of resolution on a
classwide basis.  Thus, commonality is satisfied.

### 3.  Typicality

Rule 23(a)(3) requires Plaintiff to demonstrate that the proposed class representatives'
claims are typical of those of the class.  Fed. R. Civ. P. 23(a)(3).  Plaintiff must show that "the
same unlawful conduct was directed at or affected both the named plaintiff and the class sought to
be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (citations omitted).
"[D]ifferences in the degree of harm suffered, or even the ability to prove damages, do not vitiate
the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No.
10 CV 7493 VB, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); *see also In re Global
Crossing*, 225 F.R.D. at 452 ("Indeed, when 'the same [alleged] unlawful conduct was directed at
or affected both the named plaintiff and the class sought to be represented, the typicality
requirement is usually met irrespective of minor variations in the fact patterns underlying

individual claims.'") (citation omitted).  Moreover, district courts within the Second Circuit have

found typicality easily satisfied in the context of preliminary approval of a settlement class.  *See,*

*e.g., Manley*, 2016 WL 1274577, at *4; *Hadel*, 2016 WL 1060324, at *2; *Tart*, 2015 WL 5945846,

at *3.

Here, typicality is satisfied because Capital One's conduct in refusing to update the credit

furnishing associated with Class Members' debts was directed at or affected the Plaintiff and Class

Members equally.  *Robidoux*, 987 F.2d at 936-37.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires Plaintiff to demonstrate that the proposed representatives will "fairly

and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy

requirement consists of two separate inquiries.  First, the representative plaintiff must not possess

interests that conflict with those of the class.  Second, plaintiff must be represented by qualified,

experienced counsel able to fully litigate their claims.  *Marisol A.*, 126 F.3d at 378.

To satisfy the first inquiry, Plaintiff must demonstrate that "the members of the class

possess the same interests" and "no fundamental conflicts exist" between a proposed class

representative and the class members.  *Charron*, 731 F.3d at 249.  Here, Plaintiff and Class

Members possess the same interests because they were all allegedly affected in the same manner

by Capital One's alleged refusal to update the credit furnishing on their debts.

With respect to the second inquiry, "[i]n absence of proof to the contrary, courts presume

that class counsel is competent and sufficiently experienced to prosecute vigorously the action on

behalf of the class."  *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litig.*, 241

F.R.D. 185, 199 n.99 (S.D.N.Y. 2007) (citation omitted).  As described in Section I(B)(1), Class

Counsel are experienced and knowledgeable and have litigated the Settlement Class's claims

thoroughly and with vigor.  Further, Class Counsel have no interests that are adverse to those of

Plaintiff or the Settlement Class.

For these reasons, the adequacy requirement is satisfied.

### 5.  Predominance and Superiority

In addition to satisfying the four requirements of Rule 23(a), the proposed class also

satisfies the requirements of Rule 23(b)(3) that "questions of law or fact common to class members

predominate over any questions affecting only individual members" and that class treatment "is

superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.

R. Civ. P. 23(b)(3).

"The Rule 23(b) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 623 (1997).  To meet the predominance requirement, "a plaintiff must establish that the issues

in the class action that are subject to generalized proof, and thus applicable to the class as a whole,

predominate over those issues that are subject only to individualized proof."  *In re Nassau Cty.*

*Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (citation omitted).  When a proposed class

is certified for settlement purposes, there are no concerns about whether individual issues would

"present intractable management problems" at trial because "the proposal is that there be no trial."

*Amchem Prods.*, 521 U.S. at 620.  As a result, "the predominance inquiry will sometimes be easier

to satisfy in the settlement context."  *Tart*, 2015 WL 5945846, at \*4 (citation omitted).

Here, common questions predominate over any questions that may affect individual Class

Members.  The central common question in this action is whether Capital One's refusal to update

the credit furnishing with respect to Class Members' Affected Accounts violated the discharge

injunction.  This question is subject to generalized proof, as it focused on Capital One's course of

conduct, rather than any individualized conduct by Plaintiff or Class Members. Moreover, this common issue dominates the litigation and outweighs any issues that might not be subject to common proof. *In re Nassau Cty.*, 461 F.3d at 227-28. Thus, the predominance requirement is readily met for purposes of the Settlement Class.

In addition, prosecuting this action as a class action is clearly superior to other methods of adjudicating this matter. Here, thousands of individual consumers were affected by Capital One's alleged conduct, and settling their claims in the context of a class action will conserve both judicial and private resources, and will hasten recovery. *See In re Buspirone Patent Litig.,* 210 F.R.D. 43, 58 (S.D.N.Y. 2002) ("The numerous common issues of fact and law and the difficulty of numerous individual lawsuits indicates that a class action is superior to other methods for a fair and efficient adjudication of the controversy."); *see also D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (The court needs to consider "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications.").

### D.  The Court Should Approve the Proposed Notice Plan.

Rule 23(e)(1) requires the Bankruptcy Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ, P. 23(e)(1). The Bankruptcy Court has broad discretion to approve the proposed manner of giving notice, so long as the procedures are reasonable and comport with due process. *Visa*, 396 F.3d at 113 ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness.") (citations omitted); *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

Rule 23(c)(2)(B) also provides that, for any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It further provides that the notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

Here, the proposed notice plan is reasonable and meets the requirements of the Federal Rules of Civil Procedure and due process. As described above, Mail Notice will be provided to the Class promptly after the entry of the Preliminary Approval Order. Here, Capital One's records and publicly available bankruptcy court records permit identification of all Class Members, allowing Notice to be sent directly to them. Agreement, §§ 6.3; 7.2. The Settlement Administrator will send Mail Notice directly to Class Members via first class mail within forty-five days after the Bankruptcy Court enters the Preliminary Approval Order. *Id.* at §§ 1.34; 7.3. The Settlement Agreement, Long-Form Notice and Claim Forms will also be available on the Settlement Website. *Id.* at § 7.6. Thus, the Notice will be provided to all Class Members in a timely fashion, giving them sufficient time to decide whether to participate in the Settlement, object or opt out. *See generally* §§ 11, 12. Thus, this proposed notice plan more than meets the reasonableness standard.

In addition, the proposed notices (Mail Notice and Long Form Notice) are sufficiently detailed, as required by Rule 23(c)(3). The notices describe the nature of the Action, define the Settlement Class, explain the Released Claims, as well as the monetary and other terms of the

Settlement, and fully detail the Settlement Class Members' rights. *See* Settlement Agreement, Exh. 1a, 1b. The notices will also indicate the time and place of the Final Approval Hearing (or, if it has not been set, where to learn that information), and the process of opting out of or objecting to the Settlement. *Id.* The notices also detail the provisions for payment of Attorneys' Fees and Expenses and provide contact information for Class Counsel. *Id.*

For these reasons, the proposed notice plan is not only reasonable but also the best notice that is practicable under the circumstances.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Bankruptcy Court: (1) preliminarily approve the Settlement Agreement; (2) certify the Settlement Class and appoint the Plaintiff as class representative and Boies Schiller Flexner LLP and Charles Juntikka & Associates as Class Counsel; (3) and approve the form and manner of Notice.

Date:   April 8, 2019                    **BOIES SCHILLER FLEXNER LLP**

                                         By:   */s/ Adam R. Shaw*
                                         George F. Carpinello
                                         Adam R. Shaw
                                         Anne M. Nardacci
                                         30 South Pearl Street
                                         Albany, New York 12207
                                         (518) 434-0600

                                         **CHARLES JUNTIKKA & ASSOCIATES LLP**
                                         Charles Juntikka
                                         30 Vesey Street, #100
                                         New York, NY  10007
                                         (212) 315-3755

                                         *Attorneys for Plaintiff*